IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| EWAN BROBERG-MOFFITT, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. CIV-21-81-SM |
| ) | |
| KILOLO KIJAKAZI, ) | |
| ACTING COMMISSIONER OF ) | |
| SOCIAL SECURITY, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Ewan Broberg-Moffitt (Plaintiff) brings this action for judicial review of the Commissioner of Social Security's final decision that he was not "disabled" under the Social Security Act. *See* 42 U.S.C. §§ 405(g), 423(d)(1)(A). The parties have consented to the undersigned for proceedings consistent with 28 U.S.C. § 636(c). Docs. 15, 16.

Plaintiff asks this Court to reverse the Commissioner's decision and remand the case for further proceedings, claiming that the administrative law judge's (ALJ) decision lacks substantial supporting evidence as it improperly assessed Plaintiff's individualized education program's (IEP) impact. Doc. 17, at 3-10. After a careful review of the administrative record (AR), the parties'

briefs, and the relevant authority, the Court affirms the Commissioner's decision. *See* 42 U.S.C. § 405(g).[1]

## I. Administrative determination.

### A. Disability standard.

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). "This twelve-month duration requirement applies to the claimant's inability to engage in any substantial gainful activity, and not just [the claimant's] underlying impairment." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Barnhart v. Walton*, 535 U.S. 212, 218-19 (2002)).

### B. Burden of proof.

Plaintiff "bears the burden of establishing a disability" and of "ma[king] a prima facie showing that he can no longer engage in his prior work activity." *Turner v. Heckler*, 754 F.2d 326, 328 (10th Cir. 1985). If Plaintiff makes that

---

[1]  Citations to the parties' pleadings and attached exhibits will refer to this Court's CM/ECF pagination. Citations to the AR will refer to its original pagination.

prima facie showing, the burden of proof then shifts to the Commissioner to show Plaintiff retains the capacity to perform a different type of work and that such a specific type of job exists in the national economy. *Id.*

## C. Relevant findings.

### 1. Administrative Law Judge's findings.

The ALJ assigned to Plaintiff's case applied the standard regulatory analysis to decide whether Plaintiff was disabled during the relevant timeframe. AR 16-18; *see* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *see also Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (describing the five-step process). The ALJ found that Plaintiff:

(1) had not attained age 22 as of September 24, 2018, the alleged onset date;

(2) had not engaged in substantial gainful activity since the alleged onset date;

(3) has the following severe impairments: anxiety disorder, not otherwise specified; depressive disorder; oppositional defiant disorder; and intermittent explosive disorder;

(4) has no impairment or combination of impairments that meets or medically equals the severity of a listed impairment;

(5) has the residual functional capacity[2] (RFC) to perform a full range of work at all exertional levels with the following non-exertional

---

[2] Residual functional capacity "is the most [a claimant] can still do despite [a claimant's] limitations." 20 C.F.R. §§ 404.1545 (a)(1), 416.945(a)(1).

> limitations: work performance is limited to one- and two-step tasks and instructions that are repetitive with little judgment required; occasional interaction with co-workers and supervisors; and no public interaction;

(6) has no past relevant work;

(7) can perform jobs that exist in significant numbers in the national economy, such as auto detailer, landscape specialist, and housekeeping cleaner; and so,

(8) was not under disability from September 24, 2018 through July 17, 2020.

*See* AR 18-31. The claimant bears the burden of proof through step four of the analysis. *Blea v. Barnhart*, 466 F.3d 903, 907 (10th Cir. 2006).

### 2. Appeals Council's findings.

The Social Security Administration's Appeals Council denied Plaintiff's request for review, *see* AR 1-6, making the ALJ's decision "the Commissioner's final decision for [judicial] review." *Krauser v. Astrue*, 638 F.3d 1324, 1327 (10th Cir. 2011).

## II. Judicial review of the Commissioner's final decision.

### A. Review standard.

The Court reviews the Commissioner's final decision to determine "whether substantial evidence supports the factual findings and whether the ALJ applied the correct legal standards." *Allman v. Colvin*, 813 F.3d 1326, 1330 (10th Cir. 2016). Substantial evidence is "more than a scintilla, but less

4

than a preponderance." *Lax*, 489 F.3d at 1084; *see also Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) ("It means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'") (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). A decision is not based on substantial evidence "if it is overwhelmed by other evidence in the record." *Wall*, 561 F.3d at 1052. The Court will "neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Newbold v. Colvin*, 718 F.3d 1257, 1262 (10th Cir. 2013).

**B.    Issue for judicial review.**

Plaintiff argues that the ALJ's RFC assessment "did not appropriately consider [Plaintiff's] IEP accommodations or their impact on the RFC." Doc. 17, at 8. He argues the "ALJ improperly relied on [Plaintiff's] academic success . . . without taking into account" the IEP's several accommodations that "heavily contributed" to that success. *Id.* at 3.

The ALJ found

> In addition to medical evidence of record, the undersigned notes the claimant's history of special educational services offered through the Moore Public Schools. The claimant's [IEP] for his freshman year of high school during academic year 2016-2017 reflect services for English and math. The claimant appeared to be adjusting to high school rather well and maintaining very good grades in all of his classes according to the IEP dated October 2016 (Exhibits 25E and 26E). The claimant's academic success is

5

> evident in his Official Transcript generated on May 13, 2020. During the claimant's 12th grade academic year, the claimant earned a cumulative GPA (weighted) of 3.60 and a cumulative GPA (unweighted) of 3.56 placing him at the rank of 289 of 598 students. Specific consideration is given to the claimant's academics success during 9th grade when he earned all A's and B's with GPA 3.67 during the 1st term and 3.83 during the 2nd term. The claimant's 10th grade academic success showed A's and B's with 1st term GPA 3.83 and 2nd term GPA 3.67. The claimant's academic success during his 11th grade year is reflected in A's and B's with 1st term GPA 4.0 and 2nd term GPA 3.67. Although the claimant clearly struggled with algebra II during his 12th grade year, the remainder of his grades were A's and B's with 1st term GPA 2.83 (Exhibit 34E; see also Exhibit 18F, page 11).

AR 27.

As Plaintiff points out, an IEP is an important source of information "'about a child's abilities and impairment-related limitations, and provide[s] valuable information about the various kinds [and] levels of support a child receives.'" Doc. 17, at 5 (quoting SSR 09-2p, 2009 WL 396032, at *5 (Feb. 18, 2009)). But, as the Commissioner notes, "the underlying purpose of these documents is *not to determine disability under our rules*. . . . In contrast, we use the information in the [] IEP to help determine if the child has marked and severe functional limitations." SSR 09-2p, 2009 WL 396032, at *6 (emphasis added); *see* Doc. 22, at 10. And that is how the ALJ used the IEP here.

The ALJ found Plaintiff has a moderate limitation in understanding, remembering, or applying information; in interacting with others; in

6

concentrating, persisting, or maintaining pace; and in adapting or managing oneself. AR 18-20. The ALJ reviewed the function reports Plaintiff's parents submitted in making these assessments. *Id.* The ALJ considered the objective medical evidence, the information Plaintiff's teachers provided, and Plaintiff's progress under the IEP plan. *Id.* at 18-28. The ALJ discounted Plaintiff's consistency. *Id.* at 22.

Substantial evidence supports the ALJ's RFC assessment. The ALJ imposed limitations that tracked his findings. Because Plaintiff had a moderate limitation in understanding, remembering, or applying information, the RFC assessment limited him to unskilled work of one- or two-step tasks, with repetitive instruction, requiring little judgment. This tracks some of his teachers' notes about Plaintiff's comprehension abilities and his struggles to complete complex tasks on time. *Id.* at 27-28. And this tracks his IEP, which allowed test and assignment retakes, provision of additional time, and need for additional resource assistance. *Id.* at 495-96, 312, 445, 956-57.

The RFC assessment limited Plaintiff to occasional interaction with co-workers or supervisors and no public interaction. *Id.* at 20. These restrictions comport with his moderate limitation in interaction with others. And this accounts for reports that Plaintiff "sometimes struggled with social skills" and

7

of his "unaware[ness] of social cues." *Id.* at 28. His IEP similarly showed Plaintiff took science, English, and math classes in a separate classroom from others. *Id.* at 495-96.

Plaintiff argues the RFC assessment does not allow him to leave his workstation for additional assistance, to re-do any unsatisfactory work, or to make continuous spelling errors. Doc. 17, at 8-9. Again, the ALJ's imposition of significant restrictions—notably unskilled one- or two-step tasks—addresses these limitations. At the ALJ hearing level, it is the ALJ's responsibility to assess RFC. 20 C.F.R. §§ 404.1546(c), 416.946(c). The ALJ is not bound by Plaintiff's high school IEP restrictions. SSR 09-2p, 2009 WL 396032, at *6.

Finally, Plaintiff suggests the ALJ relied too heavily upon Plaintiff's "academic success," Doc. 17, at 9-10. As the Commissioner notes, two state agency reviewing psychologists, the psychological consultative examiner, and Plaintiff's former psychiatrist all found Plaintiff was capable of employment with no greater mental restrictions beyond those the ALJ included. Doc. 22, at 12 (citing AR 115, 128, 829-35, 876). And his most recent IEP stated that Plaintiff's "academic abilities, excellent attendance, and work ethic will give

8

him the opportunity to be successful both academically and occupationally." AR 951. Substantial evidence therefore supports the ALJ's decision.

### III. Conclusion.

Based on the above, the Court affirms the Commissioner's decision.

**ENTERED** this 9th day of December, 2021.

_____
SUZANNE MITCHELL
UNITED STATES MAGISTRATE JUDGE